Jimmy W. Miles
Larned State Hospital
Dillon Building-SPTP
Rural Route 3, Box 89
Larned, Kansas 67550
Phone: (620) 285-2156

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

03-3353-GTV

**FILED**

AUG 2 5 2003

RALPH L. DeLOACH, Clerk

By _____ Deputy

| | |
|---|---|
| **JIMMY W. MILES,** ) | |

Plaintiff, )

vs. )

)

**STATE OF KANSAS; KANSAS** )
**DEPARTMENT OF SOCIAL AND** )
**REHABILITATION SERVICES; DR.** )
**JANET SCHALANSKY,** Secretary of the )
Department of Social and Rehabilitation )
Services; **Dr. MARK E. SCHUTTER,** )
Superintendent of Larned State Security )
Hospital**; Dr. AUSTIN T. DESLAURIERS,** )
Program and/or Clinical Director for the )
Kansas Sexual Predator Treatment Program; )
**ROGER HIGGINS,** Chief of Staff for )
the Sexual Predator Treatment Program; )
**KRISTI FEEBACK,** Primary Therapist for )
the Sexual Predator Treatment Program; **PAT** )
**BEARD,** Primary Therapist for the Sexual )
Predator Treatment Program; **SHANNON** )
**FISCHER,** Activities Therapist for the )
Sexual Predator Treatment Program and any )
and all **John Doe,** and/or **Jane Doe,** )
officials, agencies, or entities, including, but )
not limited to, any and all Counselors or )
Treatment Team, Clinical Team and )
Supervisory Team, or Clinical )
Psychologists or Psychiatrists who aid, )
abet, assist, and/or work at the Kansas )
Sexual Predator Treatment Program; all )
defendants are sued in both their official and )
individual capacities and were acting under )
the **COLOR OF STATE LAW,** at all times )
relevant in the complaint, )

)

_____**Defendants.**_____ )

**Case No.:** 03-3353-GTV

To be Supplied by the Clerk of the Court.

# CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983

## JURY DEMAND

## I.   INTRODUCTION

1.   This is a Section 1983 action filed by plaintiff, Jimmy W. Miles, <u>Pro Se</u>., a person involuntarily committed to the custody of the Secretary of the Department of Social and Rehabilitation Services for care and treatment, by the State of Kansas, pursuant to K.S.A. 59-29a01 et seq., (commonly referred to as the "Kansas Sexually Violent Predator Act") and confined at the Sexual Predator Treatment Program, on the grounds of Larned State Security Hospital, in Larned, Kansas.  The plaintiff alleges that during his confinement at SPTP, the defendants, employees of the Department of Social and Rehabilitation Services, have deprived him of his federal and state constitutional and statutory rights.  Furthermore, Mr. Miles alleges the conditions of his confinement are unconstitutionally restrictive.  The defendants have failed to provide **"adequate treatment"** that will give Mr. Miles a realistic opportunity for release.   Plaintiff, Jimmy Miles, seeks declaratory and injunctive relief and compensatory and punitive damages in this action.

## II.   JURISDICTION AND VENUE

2.   This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3), as plaintiff alleges herein, pursuant to 42 U.S.C. § 1983, that defendants, under the **COLOR OF STATE LAW**, have deprived plaintiff, Jimmy Miles of his rights, privileges and immunities secured by the first, fourth, and fourteenth amendments to the United States Constitution.

3.   This Court has jurisdiction pursuant to the provision of the United States Constitution over each claim, and to grant such equitable relief as appropriate to correct the wrong[s] done, under Article III, Section 2, of the United States Constitution.

4.   The venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as all defendants reside in this district and a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## III.  DECLARATORY AND INJUCTIVE RELIEF

5.   This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges and immunities to which the plaintiff, Jimmy Miles, is entitled while committed to the custody and care of the Department of Social and Rehabilitation Services. Moreover, pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary and proper relief.

## IV.  PARTIES

6.   Plaintiff, **Jimmy Wayne Miles**, is involuntarily committed pursuant to K.S.A. 59-29a01 et seq., to the custody of the Secretary of the Department of Social and Rehabilitation Services, for care and treatment by the State of Kansas, and is presently confined to the Sexual Predator Treatment Program, on the grounds of Larned State Security Hospital, Dillon Building, in Larned, Kansas.

7.   Defendant, **State of Kansas**, is a political subdivision of the United States of America; this defendant, based on statute, case law, and/or common law, is capable of both suing and being sued in the courts of this state. At all times relevant in the complaint, this defendant was operating under **COLOR OF STATE LAW**.

8.   Defendant, **Department of Social and Rehabilitation Services**, is an entity, agency, or official of the State of Kansas, this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in the complaint, this defendant was operating under **COLOR OF STATE LAW**.

9.   Defendant, **Dr. Janet Schalansky,** an individual citizen of the State of Kansas, and presently employed as the Secretary of the Department of Social and Rehabilitation Services, in Topeka, Kansas, an entity, agency or official of the State of Kansas; this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in this complaint, this defendant, was acting under **COLOR OF STATE LAW**, and is being sued in both her official and individual capacities. As the Secretary of the Department of Social and Rehabilitation Services, this defendant, has supervisory authority and responsibility for the administration and operations of Larned State Hospital; for approving, promoting, and directing to be carried out, all Department of Social and Rehabilitation Services policies, practices and procedures; for overseeing and training of all administrative personnel of Larned State Hospital, and for the care and treatment of Mr. Miles. This defendant knew or should have known, or failed to take

steps to prevent or directed, the various policies, practices and procedures concerning the manner and scope of treatment for which creates the punitive environment and excessively restrictive conditions under which she presently confines Mr. Miles. This defendant has approved of these deprivations of plaintiff's constitutional rights, as alleged herein.

10.   Defendant, **Dr. Mark E. Schutter,** an individual citizen of the State of Kansas, and employed as Superintendent of Larned State Security Hospital, in Larned, Kansas, for the Department of Social and Rehabilitation Services, an entity, agency or official of the State of Kansas; this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state.   During all times relevant in the complaint, this defendant, was acting under **COLOR OF STATE LAW,** and is being sued in both his official and individual capacities.   As Superintendent of Larned State Hospital, this defendant, has supervisory authority and responsibility for the administration and operations of Larned State Hospital; for promulgating, approving and carrying out all Department of Social and Rehabilitation Services policies, practices and procedures; for overseeing and training of all Larned State Hospital personnel, including but not limited to the Sexual Predator Treatment Program personnel.   The defendant knew or should have known about and approved or promulgated or directed various policies, practices and procedures concerning the manner and scope of treatment for which creates the punitive environment and excessively restrictive conditions under which he presently confines Mr. Miles, and has failed to take steps to prevent each of these deprivations of plaintiff's constitutional rights, as alleged herein.

11.    Defendant, **Dr. Austin DesLauriers**, an individual citizen of the State of Kansas, is employed by the Department of Social and Rehabilitation Services; as Program and/or Clinical Director for the Kansas Sexual Predator Treatment Program, of Larned State Security Hospital, in Larned, Kansas, an entity, agency or official of the State of Kansas; this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in this complaint, this defendant was acting under **COLOR OF STATE LAW**, and is being sued in both his official and individual capacities. This defendant, does have administrative authority and responsibility for the administration and operations of the Sexual Predator Treatment Program, for promulgating, approving and carrying out both SPTP and the Department of Social and Rehabilitation Services policies, practices and procedures; for overseeing, and training of all Sexual Predator Treatment Program personnel, and for the care and treatment of Mr. Miles. This defendant is also a member of the Treatment Team, Clinical Team, and/or the Supervisory Team. This defendant, knew or should have known about and approved or promulgated or directed, the various policies, practices and procedures concerning the manner and scope of the treatment provided which creates the punitive environment and excessively restrictive conditions under which plaintiff is presently confined. Often, this defendant directly participated in and exercised reasonably close supervision of personnel who are responsible for the deprivation of the plaintiffs constitutional rights. This defendant, knew or should have known about and approved or failed to take steps to prevent each of these deprivations of plaintiff's constitutional rights, as alleged herein.

12.    Defendant, **Roger Higgins**, an individual citizen of the State of Kansas, and employed by the Department of Social and Rehabilitation Services, as Chief of Staff, for the Kansas Sexual Predator Treatment Program, of Larned State Security Hospital, in Larned, Kansas, an entity, agency or official of the State of Kansas; this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in this complaint, this defendant was acting under **COLOR OF STATE LAW**, and is being sued in both his official and individual capacities. This defendant, does have administrative authority and responsibility for the administration and operations of the Sexual Predator Treatment Program, for promulgating, approving and carrying out both SPTP and the Department of Social and Rehabilitation Services policies, practices and procedures; This defendant is also a member of the Treatment Team, Clinical Team, and/or the Supervisory Team. This defendant, knew or should have known about and approved or promulgated or directed, the various policies, practices and procedures concerning the manner and scope of the treatment provided which creates the punitive environment and excessively restrictive conditions under which the plaintiff is presently confined. Often, this defendant directly participated in and exercised reasonably close supervision of personnel who are responsible for the deprivation of Mr. Miles constitutional rights. This defendant, knew or should have known about and approved or failed to take steps to prevent each of these deprivations of plaintiff's constitutional rights, as alleged herein.

13.    Defendant, **Kristi Feeback**, an individual citizen of the State of Kansas, and employed as one of the "Primary Therapist" for the Kansas Sexual Predator Treatment

Program, an entity, agency or official of the State of Kansas; this defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in the complaint, this defendant, was acting under **COLOR OF STATE LAW**, and is being sued in both her official and individual capacities. Defendant Mrs. Kristi Feeback, was assigned as plaintiff's primary therapist upon his arrival at SPTP. This defendant, is also a member of the Treatment Team, Clinical Team, and/or Supervisory Team. The defendant, is responsible for carrying out both SPTP and the Department of Social and Rehabilitation Services, policies, practices and procedures, and for the care and treatment of the plaintiff. This defendant, has directly participated in and/or known about, and exercised reasonably close supervision of personnel who are responsible for, the deprivation of plaintiff's constitutional rights. This defendant knew or should have known, or failed to take steps to prevent or directed, the various policies, practices and procedures concerning the manner and scope of treatment for which creates the punitive environment and excessively restrictive conditions under which presently exposes Mr. Miles and approved each of these deprivations of plaintiff's constitutional rights, as alleged herein..

14. Defendant, **Pat Beard,** an individual citizen of the State of Kansas, and employed as one of the Primary Therapist for the Kansas Sexual Predator Treatment Program, an entity, agency or official of the State of Kansas; This Defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in the complaint, this defendant, was acting under **COLOR OF STATE LAW**, and is being sued in both her official and

individual capacities. Defendant Mrs. Beard, was assigned as the plaintiff's primary therapist after his first year at S.P.T.P. This defendant, is also a member of the Treatment Team, Clinical Team, and/or Supervisory Team.  The defendant, is responsible for carrying out both S.P.T.P. and the Department of Social and Rehabilitation Services, policies, practices and procedures, and for the care and treatment of the plaintiff.  This defendant, has directly participated in and/or should have known about, and exercised reasonably close supervision of personnel who are responsible for, and sometimes participated in the deprivation of plaintiff's constitutional rights.  This defendant knew or should have known, or failed to take steps to prevent or directed, the various policies, practices and procedures concerning the manner and scope of treatment for which creates the punitive environment and excessively restrictive conditions under which presently exposes Mr. Miles, and approved each of these deprivations of plaintiff's constitutional rights, as alleged herein.

15. Defendant, **Shannon Fischer,** an individual citizen of the State of Kansas, and employed as one of the "Activities Therapist" for the Kansas Sexual Predator Treatment Program, an entity, agency or official of the State of Kansas; This Defendant, based on statute, case law, and/or common law is capable of both suing and being sued in the courts of this state. During all times relevant in the complaint, this defendant, was acting under **COLOR OF STATE LAW,** and is being sued in both her official and individual capacities. Defendant Mrs. Fischer, is assigned as the plaintiff's primary activities therapist at S.P.T.P. This defendant, is one of the staff responsible for the hiring of the Vocational Training Program (VTP) workers at SPTP

and a member of the Treatment Team, Clinical Team, and/or Supervisory Team. The defendant, is responsible for carrying out both S.P.T.P. and the Department of Social and Rehabilitation Services, policies, practices and procedures, and for the care and treatment of the plaintiff. This defendant, has directly participated in and/or should have known about, and exercised reasonably close supervision of personnel who are responsible for, and sometimes participated in the deprivation of plaintiff's constitutional rights. This defendant knew or should have known, or failed to take steps to prevent or directed, the various policies, practices and procedures concerning the manner and scope of treatment for which creates the punitive environment and excessively restrictive conditions under which presently exposes Mr. Miles, and approved each of these deprivations of plaintiff's constitutional rights, as alleged herein.

14. Defendant, **John Doe** and/or **Jane Doe** officials are any individual people employed by the Department of Social and Rehabilitation Services. Who was acting under the **COLOR OF STATE LAW**, while working at the Kansas Sexual Predator Treatment Program, an agency or entity, including, but not limited to, all Counselors, Treatment Team, Clinical Team, Supervisory Team, Clinical Psychologist and/or Psychiatrists who aid, abet, and are responsible for carrying out all SPTP policies, practices and procedures and for the care, custody and treatment of Mr. Miles. Each defendant has directly or indirectly participated in the deprivation of his constitutional rights as alleged herein.

15. In all respects material to this action, all defendants have acted in both their individual capacities and their official capacities as employees of the Department of Social and Rehabilitation Services.

16.    In all respects material to this action, all defendants acted within the scope of their employment with the Department of Social and Rehabilitation Services, but exceeded the legitimate scope of their official authority.

17.    In all respects material to this action, all defendants acted under **COLOR OF LAW** and under color of their authority as officers and employees of the Department of Social and Rehabilitation Services.

## V.  FACTUAL  ALLEGATION

### A.  BASIS FOR CONFINEMENT:

18.    The Kansas Statutes Annotated, more specifically, K.S.A. 59-29a01 et seq., provides for the involuntary commitment of persons judicially determined to be a "sexually violent predator" who is suffering from a "mental abnormality or personality disorder"that makes it "likely" that he will offend again if released.  A person committed under this statute may not be released from confinement until and unless judicially determined that his "mental abnormality or personality disorder" has so changed that he is safe to be at large and will not engage in acts of sexual violence if discharged.

19.    Plaintiff, has been confined at the Kansas Sexual Predator Treatment Program since December 18, 2001. From November 11, 2001 until December 18, 2001 Mr. Miles was detained at the Wyandotte County Detention Center pending judicial determination as to whether he was a "sexually violent predator" in commitment

proceedings brought against him by the Wyandotte County District Attorneys office pursuant to K.S.A. 59-29a01 et seq. On or about December 11,2001, the Plaintiff was determined to have an unspecified "mental abnormality" and more likely than not to reoffend. Plaintiff was found to be a "sexually violent predator," and was committed involuntarily to the Department of Social and Rehabilitation Services for care and treatment. Since December 18, 2001, plaintiff has been held him at the Kansas Sexual Predator Treatment Program. The Department of Social and Rehabilitation Services has not provided the Plaintiff a date certain by which he will be released from the care and custody of the Kansas Sexual Predator Treatment Program. The purpose of confinement in this program is for adequate care and treatment, not for punishment. Punitive confinement without **"adequate treatment"** and a valid , current criminal judgement and sentence, violates due process, equal protection, and the guarantees against double jeopardy, ex post facto laws, and cruel and unusual punishment.

20.  Plaintiff understands that the "Kansas Sexual Predator Act" has been held constitutional so he does not challenge those issues in this litigation. This litigation addresses only the treatment he has or has not received from the defendants while being  confined, the unconstitutional punishment that the defendants have imposed on him while he has been confined and the overly restrictive conditions under which he is confined. The Statute K.S.A. 59-29a01, must justify continued  therapeutic progress or the release of the patient. The failure to provide **"adequate treatment"** cannot be justified by lack of funds, insufficient staff or inadequate facilities.

**B.    CONDITIONS OF CONFINEMENT:**

**G E N E R A L L Y**

21.    The conditions under which these defendants have confined the plaintiff, have been and/or are restrictive.  Such excessively restrictive conditions are unrelated to any legitimate security concerns or recognized treatment purposes, or are for harassing, intimidating, embarrassing, humiliating, and have caused Plaintiff physical discomfort, harm and pain.  There are less restrictive alternatives available.  The negative atmosphere of the living environment makes treatment ineffective.  Trust is a critical element of any treatment program or therapist-patient relationship.  Currently the Plaintiffs assigned Therapist has a neglectful rapport with the Plaintiff which provides no basis for trust  between Plaintiff and said Therapist.

**C.    CARE AND TREATMENT:**

22.    The statute mandates that during involuntary commitment pursuant to K.S.A. 59-29a01 et seq., the person is entitled to all constitutionally required care and treatment.  Accordingly, the plaintiff is entitled to such **"adequate treatment"** as will give him a realistic opportunity to meet the statutory requirements to be released from confinement, as determined by an appropriate mental health professional that is within the scope of acceptable mental health treatment.  The "right to treatment" is triggered by the deprivation of physical liberty that generally results from commitment, not from the entry of a commitment order alone.  This also triggers substantive due process protections

23.   There is no **"adequate"** mental health treatment program at SPTP due to it's emphasis on keeping residents committed. The excessive rules that defendant, Mr. Higgins has control of related to security and the inconsistent application of rules found at SPTP are destructive to the treatment environment. In the psychiatric community, most would not dispute the doctor-patient relationship is of the utmost importance, and the use of any force would certainly disrupt this relationship or impedes its formation. Most of these shortcomings involve acts or conditions that are not based upon professional judgement at all.

24.   Defendants, including specifically, Dr. Janet Schalansky, Dr. Mark E. Schutter, Dr. Austin DesLauriers, Mr. Roger Higgins, Mrs. Kristi Feeback , Mrs. Pat Beard and Mrs. Shannon Fischer (hereafter referred to as "Defendants") are responsible for providing said Constitutional care and treatment to the plaintiff, Mr. Miles.

25.   Since December 18, 2001, these said defendants have not and are not now providing Plaintiff, with **"adequate treatment"** that will give him a realistic opportunity to meet the statutory requirements to be released from confinement. Defendants reluctance to **"adequate treatment"** of residents in this program has caused irreparable harm although committed, because of some alleged "mental abnormality," these defendants have not clinically diagnosed what specific "mental abnormality or personality disorder" Plaintiff actually suffers from. In fact, the only evaluations conducted on the plaintiff have been forensic in nature as part of the prosecution for the "Sexually Violent Predator Act" petition itself. To date plaintiff has not been assessed or tested by a certified person to determine plaintiffs specific areas of

---

treatment necessary for his progressing through the program. Activity Staff members who are called Activity Therapist (hereafter referred to as AT), Mental Health Specialist who are nothing more than a Security officer (hereafter referred to as MHS) and/or Educational staff members have only administered nothing more than the equivalent of a sobriety test to determine a residents coordination skills.

26.   Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed. Presently, the "Individual Treatment Plan" that the plaintiff has been assigned, was done without the plaintiff being present. Based on information and belief, this individual treatment plan is wholly inadequate, and does not address the plaintiff's specific treatment needs nor provide the progressive steps he needs to take to advance in treatment for the eventuality of his release. This individual treatment plan is to be updated every 90 days by the defendants, but due to the overwhelming ratio of residents to therapists this has not been accomplished, or if it has, plaintiff has not been informed. When the individual treatment plan has been updated it has been in the absence of the plaintiff. This leaves the plaintiff unsure of his compliance with the previous plan and what is expected of him in the revised version. Each individual treatment plan sets goals for attendance and activity participation and are not specific for plaintiffs needs beyond the offending behaviors. Plaintiff has no objectives by which to measure his progress and compliance to said Individual Treatment Plan. There are no provisions for conditional release to less restrictive alternatives incorporated in these Individual Treatment Plans. Due to the inadequate ratio of professional therapist staffing, therapist perform their roles in a distance, only appearing in the facility on a minimum

basis. None of the defendants, nor any of the other employees of SPTP, except for the defendant Dr. DesLauriers, has received any specialized training in treating sex offenders, yet Mrs. Beard and Mrs. Feeback are allowed to institute individual treatment plans without this specialized training.

27.    Despite plaintiffs request, these defendants have not provided plaintiff with more frequent and intensive individualized treatment sessions other than the one hour per month that was provided in the first year and a half. Defendants Mrs. Feeback and Mrs. Fischer's offices are in the basement of plaintiff's living unit and Defendant's Dr. DesLauriers, Mr. Higgins and Mrs. Beard, office's are in a building outside the plaintiff's living unit. These defendants spend less than fifteen minutes per month (if that) on the living unit, with the exception of the one hour per week defendants provide as community meetings. Mrs. Beard and Mrs. Feeback are assigned to provide the individual therapy for the level I and II residents from the plaintiff's living unit, and the three hours per week for group therapy in modular-B for the level I and II residents from the plaintiff's living unit. However, they routinely cancel these individual and/or group therapy sessions, or they are interrupted due to facility operations. Since April, 2003, I have had no individual therapy sessions and the group therapy sessions as of June, 2003, have been cut back to two hours per week. Plaintiff has almost no contact with his therapist because of her case load. There is no male therapist for the plaintiff's living unit, which makes it hard for residents who have problems dealing with female therapists. The plaintiff would argue that trust and confidentiality are an important element in a therapeutic relationship. Yet trust and rapport between plaintiff and his therapist is very low, partly because of the

deficiency of trust and confidentiality. Staff play multiple and unnecessary roles within the facility, the MHS staff also attempt to play the role of therapist during which conflicting statements are made further confusing plaintiff.    Staff are inconsistent in implementing policies and in behavioral intervention with the residents.    This helps to create animosity among residents and encouraging the already present negative atmosphere.

28.    Based on information and belief, plaintiff believes these defendants, specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have not provided the plaintiff with treatment by a psychiatrist or licensed, trained, or certified clinical psychologist who is qualified to provide meaningful treatment to sexually violent predators.    Neither Mrs. Beard or Mrs. Feeback, both of whom at various times have been plaintiff primary therapist, are qualified, certified or licensed in psychiatry, psychology to treat plaintiff in any way as a sexually violent predator.

29.    These defendants, specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have failed to consider or credit plaintiff for the previous three years of treatment at the Wyandotte County Mental Health Center.    Defendant Kristi Feeback acknowledged that plaintiff should receive credit for prior treatment experience, but defendants have not credited him in disregard to his request to do so. The plaintiff has been told by defendants that this is due to current staffing problems. Most residents here have participated in two or more years of treatment while in prison, yet when residents start their group therapy sessions they are told by their therapist "all that time counts for nothing here and you must start all over." The plaintiff does not trust these defendants to properly evaluate him nor to diagnose and treat him.    Plaintiff will not concede to areas of treatment that he believes are inadequate.

### D.   PUNISHMENT:

### G E N E R A L L Y

30.   Although ostensibly committed for treatment, and not for punishment, these defendants specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have unconstitutionally punished the plaintiff.  Mr. Miles is a citizen of the state of Kansas and believes he is entitled to the rights and freedoms accorded every citizen.  Although the State is entitled to confine him pursuant to K.S.A. 59-29a01 et seq., (an entitlement not at issue in this litigation), the State cannot "punish" him.   He is not incarcerated upon conviction of any crime. SPTP residents are routinely treated like prisoners and in some circumstances worse, with fewer rights and opportunities as those commonly found in a prison setting.

31.   The plaintiff believes he is entitled by law to "more considerate treatment and conditions of confinement than criminals whose confinement is designed to punish." While it is true that K.S.A. 59-29a01 et seq., has a dual purpose of secure confinement and **adequate** treatment, plaintiff knows it is manifestly untrue that the statue requires (or the Constitution would permit) the return of plaintiff back to prison without *due process* and/or having committed another crime.  However, based on information and belief, these defendants specifically Dr. DesLauriers and Mr. Higgins, have returned residents to KDOC for punishment reasons. Defendants acted under **COLOR OF STATE LAW** by summoning KDOC to come on the grounds and remove residents and transferring their custody to the KDOC.  This is done without any notification to the court system which issued the order of commitment.  Based on information and belief,  this is done without any due process.

32. Based on information and belief, plaintiff believes while doing time in the KDOC there were/are more treatment opportunities and programs in place for sex offenders than there are in the Kansas Sexual Predator Treatment Program, but offenders who are returned to KDOC from this program are not given **adequate** treatment for sex offenders while there, and some remain there for years.  In the preamble Senate Bill 525, it states in part  "The prognosis for rehabilitating sexually violent predators within a prison setting is poor".

33. Based on information and belief, plaintiff believes these defendants specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have taken punitive actions against plaintiff in retaliation and retribution for his efforts to exercise his constitutional rights.   As examples, defendants specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer are punishing plaintiff  by denying  him requested copies of written policies and procedures governing the operations of the Kansas Sexual Predator Treatment Program, denying him possession of requested copies of his Individual Treatment Plan, denying him the reach of electricity within his room saying "it is a level III and above privilege," even though other residents on the same level as he is (level II) have electricity within their rooms, denying him the right to purchase a laptop computer, saying "it is a level III and above privilege," even though other residents on the same level as he is (level II) have purchased and have had possession of said items while on level II, denying him running hot water in his room, lack of any kind of educational programming other than the core phase curriculum, **adequate** counseling, therapy and treatment, stating "the budget doesn't allow it." A level system that is punitive and has no treatment rationale is in place as an attempt to force reluctant residents into accepting the alleged "therapy" being provided.

34.   These Defendants, specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have a continuing and ongoing, historical informal practice, pattern, policy, or custom of removing individuals still on parole from SPTP without any due process and returning them to KDOC custody.  Based on information and belief Mr. Miles believes defendants have a Constitutional duty to treat the plaintiff and not punish him or other residents, whom the courts of this state have intrusted in defendants care.  Such actions taken by these defendants are clearly punitive in nature, substance, intent and purpose and such punishment is not for any legitimate security or treatment concerns, but is solely to punish the plaintiff.

E.    **RESIDENT BEHAVIOR REPORTS:**

35.   These defendants specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer use a method of verbal communication in lieu of written rules or policies for punishing SPTP residents for alleged or perceived violations, misconduct, or other inappropriate behaviors.  There are many inconsistencies in the enforcing of these "unwritten" rules as interpreted by each staff member. These verbally imposed punishments leave the residents in confusion.   Defendants specifically, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have punished Plaintiff with verbal restrictions and without Due Process for an alleged violation on or around February, 2003. When Plaintiff requested documentation for alleged violation, or the evidence against him, Defendants specifically, Mrs. Feeback, Mrs. Beard said Plaintiff was not entitled to such information.  When Plaintiff spoke to the director of Consumer Relations, Ms. Jo Stevens on the alleged infraction and the restrictions imposed, she went to the Program Director, Dr. DesLauriers, about the issue.  She

then had another conference with this Plaintiff and alleged the Program Director said to her "this is a Program issue." Jo Stevens implied to the plaintiff this is a problem because several times she brought up the Patients Rights and the Program Director allegedly tells her "it is a program issue" which ties the Consumer Relations hands of trying to help any of the residents in this program. Plaintiff has received NO written notification detailing alleged offense, NO documented evidence used as a foundation for imposed punishment, nor has he received any documentation as to what punishment was imposed. Plaintiff was given NO opportunity for appeal with regard to disallowing punishment. All of these elements were by verbal communication only. Such imposed punishments known as "Resident Behavior Reports" in written form, restrict Plaintiffs rights and privileges that other residents confined at SPTP are permitted. Altogether, this verbal communication of misconduct and imposed consequences are punitive in nature, substance, intent and purpose. Such verbal "Resident Behavior Reports" serve no legitimate security or treatment concerns, but are solely to punish the plaintiff without due process. When defendants impose punishment, it usually lasts for weeks and sometimes for several months, as in my case, I have been on restricted level II since March, 2003, without any further review as of the filing of this complaint.

## F.   EXCESSIVELY RESTRICTIVE CONDITIONS:

36.   The excessively restrictive conditions of the plaintiff's, confinement imposed by these defendants, as described more specifically below, are punitive in nature, substance, intent and purpose. These excessively restrictive conditions serv e no legitimate

security or treatment concerns.  They are such a substantial departure from expected professional judgment, practice, and standards as to show that these defendants specifically Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer actually do not base their decision on such a judgment.  Moreover, the plaintiff's quality of life has diminished from that of prison life since his commitment.

## G.   EXCESSIVELY RESTRICTIVE POLICIES:

37.   All policies, procedures and practices concerning any of the operations of the SPTP, treatment of the plaintiff, the conditions of his confinement, or the rights and privileges to which he is entitled, are developed, adopted, and approved by the "Treatment Team and/or the Supervisory Team." Among others, the Treatment Team and Supervisory Team, may consist of but is not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer.  These defendants jointly establish any policy or procedure imposed at SPTP. Likewise, any action taken against Mr. Miles has been with the full knowledge and consent of these defendants including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer.

38.   As described more specifically below, the policies, procedures and practices developed and imposed by these defendants, including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have been at times, excessively restrictive.  In other instances these policies, procedures and practices have been arbitrarily and capriciously enforced.  Sometimes, the SPTP

personal have not enforced them at all. These defendants knew or should have known other SPTP personnel have carried out or enforced these policies and procedures and have approved of them or have refused to stop them from occurring.

39. Such policies, procedures and practices include, but are not limited to, the following:

- The policy and practice of denying him the ability to access electricity in his room; and

- The policy and practice of restricting which magazines, books and/or newspaper he may read; and

- The policy and practice of denying him educational programing; and

- The policy and practice of denying him any meaningful employment opportunities compatible with his medical needs; and

- The policy and practice of permitting SPTP staff to punish him by taking away his personal property; and

- The policy and practice of punishing and/or removing residents from SPTP and returning them to the KDOC without any due process or having accrued another charge; and

- The policy and practice of not testing, evaluating or assessing residents since their arrival or considering prior treatment already received in SATP while in prison, SOTP while on parole or any other treatment on the street; and

- The policy and practice of not answering grievances either in an untimely fashion, or not at all; and

- The policy and practice of placing plaintiff in seclusion each night even though he poses no security risk to himself or other residents; and

- The policy and practice of denying him use of disposable razors; and

- The policy and practice of denying him over the counter medication, such as aspirin, vitamins, decongestants and even cotton q-tips, as he had at all times during his incarceration; and

- The policy and practice of denying him freedom to move about the facility without staff present at all times, for example, to and from classes.

39. These policies and practices are overly restrictive, and are unrelated to any legitimate security or treatment concerns, and are for harassing, intimidating, embarrassing and humiliating Mr. Miles. Less restrictive alternatives to each of these policies and practices are available.

40. The plaintiff has complained about these policies, procedures and practices to these defendants, but they all have refused or failed to provide this plaintiff with any meaningful answers until the first week of May, 2003, five days before the inspection of the hospital. Even after getting the revised resident rule book, it's so vague that many questions still exist that are not answered by the resident rule book. Which sends plaintiff back to (see section D, paragraph # 34) defendants using a method of verbal communication in lieu of written rules or policies for punishing SPTP residents.

## H.   DENIAL OF ELECTRICITY:

**41.**   These Defendants, including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have developed a-level system that the plaintiff and other residents see as punitive.  Essentially we have to "earn" privileges that we routinely enjoyed while incarcerated in the KDOC. For example, if the plaintiff were in administrative segregation within the KDOC, plaintiff would have the ability to access electricity within his cell.   Despite the plaintiff's repeated requests, these defendants continue to deny Mr. Miles electricity in his room, although residents who have achieved level III, and the four residents on level II who live in the dorm have access to electricity in their rooms.  There were three other residents on Broadway who had electricity in their rooms but the administration ordered maintenance to disconnect it and informed the residents it was a level III privilege. These defendants gave no legitimate security or treatment reason for denying the use of electricity in plaintiff's room other than it is a level privilege.  Plaintiff has his own television, but without the ability to access electricity in his room plaintiff is denied use of his TV, or the ability to use other electronic products which require access to electricity (typewriter, non-battery powered stereo etc).  The defendants has put out a memo stating that "unless plaintiff and other residents on level II are willing to donate their property to the community until they reach level III, they will have to store it or send it out."  If the plaintiff were to donate his TV to the community, it is impossible for the Plaintiff to watch his TV because the designated area has only one (1) access point for a cable hookup and no access to an outside antenna for reception.  After requesting that residents donate their televisions to the community they are asked to sign a Property Liability Waiver to relinquish the responsibility of the Program to repair or replace said electronic appliances if they were to be damaged or destroyed  Such restrictions and limitations are unrelated to any legitimate security or treatment concerns and are

for the purpose of harassing, intimidating, and denying plaintiff his right to his property. These Defendants, Mrs. Feeback and Mrs. Beard have told plaintiff in two (2) different community meetings "if you don't like the way the program is ran and want to get anything changed, you will have to take the program to court."

## I.    DENIAL OF EDUCATIONAL OPPORTUNITIES:

**42.**    When Mr. Miles was first admitted to SPTP, defendants, Dr. DesLauriers and Mrs. Fischer have made no educational services available to him other than the one hour per day, four days a week of psycho-educational group core-phase lessons. No contracted educational services are available.  No home study or correspondence courses are available. Moreover, defendants have refused or failed to provide sufficient resources for providing educational services for plaintiff.  These Defendants contend that they cannot provide educational services because of lack of staff, room and the state budget does not provide the funds.

**43.**    Although, Based on information and belief, plaintiff believes KDOC has a contract with local community colleges and their own staff to provide qualified and consistent educational programming and services.  These defendants, including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have no planned educational programming for the residents of SPTP. Even though plaintiff has requested these services. Mrs. Feeback has stated in community meetings that the program does not have the staffing, funds nor room for such programs.

**44.**    Mr. Miles has no reason to believe that Defendant Dr. DesLauriers has had communications with local community colleges.  After eight-years or so of this

program's existence, there are no contract educational services available to the residents of SPTP. Despite Mr. Miles's repeated request during community meetings to receive courses that would further his education, defendants Mrs. Feeback and Mrs. Beard commonly responded to the plaintiff with answers like, "it is not in the budget" or "not at this time" or "we are working on it." Such restrictions and limitations are unrelated to any legitimate security or treatment concerns and amount to nothing more than "warehousing" the plaintiff at the Kansas Sexual Predator Treatment Program.

## J.   DENIAL OF EMPLOYMENT OPPORTUNITIES:

45.   Since Mr. Miles was first admitted to SPTP, these defendants, Dr. DesLauriers and Mrs. Fischer have made no meaningful employment opportunities available for him. In August 2002, these defendants, after requests by plaintiff for employment opportunities, offered the plaintiff nothing more than what the KDOC offered as a porter (janitorial). They classify this job opportunity in S.P.T.P. as a "Vocational Training Program."

46.   It is Mr. Miles's contention that without the opportunity to engage in meaningful employment, his hopes of ever being released is doubtful.  Meaningful employment and educational opportunities that provide job skills for release are critical to making any treatment program effective.  The longer plaintiff remains confined without access to the kind of meaningful employment and educational opportunities that will maintain or enhance the skills he had before his confinement, the less likely his employability upon release, which decreases his chances for release.  Defendants' including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer

policy to restrict any meaningful employment opportunities would affect his ability to be released from confinement.  Such restrictions and limitations are unrelated to any legitimate security or treatment concerns and are for the purposes of ignoring, humiliating and warehousing Mr. Miles.  Less alternatives are available.

## K.    DENIAL OF ACCESS TO LAW LIBRARY:

47.    As of the date of the filling of this complaint, these defendants including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have not permitted Mr. Miles access to any law library. What little access to legal materials there are, is severely restricted and effectively denies Mr. Miles any meaningful access to legal materials.  Defendants have admitted in community meetings they do not have to allow law books into the facility even if the resident pays for them.  No legitimate security or treatment concerns justify such denial of access to a law library.  Less restrictive alternatives are available.

48.    Since the plaintiffs confinement at SPTP, the defendants including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have refused to permit the plaintiff any meaningful access to a law library  despite his requests for such access.  Indeed, defendant Mrs. Feeback has acknowledged that the residents at SPTP do not have any access to a law library.

49.    Defendant Mrs. Feeback, during community meetings, has told Mr. Miles that residents are not entitled access to legal materials or a law library because the Kansas

Sexual Predator Treatment Program is not a prison. Mrs. Feeback informed Mr. Miles that attorneys adequately represent him and he does not need a law library. Furthermore, the defendant, Mrs. Kristi Feeback has told residents they cannot go to the law library because it is a level III privilege and SPTP does not have to allow law books into the program that residents have purchased. In light of this fact, defendants do not allow residents who are on level III access to a law library either. However, the defendant, Mrs. Feeback has told the plaintiff there is one on the grounds of Larned State Hospital, but they do not permit level II residents access because it is a level III and above privilege. Residents could use the legal materials on the grounds if the SPTP personnel would supervise the residents largely.

50.  The access by residents to a law library while confined at SPTP is altogether inadequate in comparisons to the access Mr. Miles had when he was in prison. These defendants including but not limited to, Dr. DesLauriers, Mr. Higgins, Mrs. Feeback, Mrs. Beard and Mrs. Fischer have never attempted to arrange a specific time for SPTP residents to use the Larned State Hospital law library.

51.  What legal materials are available at the SPTP library is wholly inadequate. The SPTP library consists of one set of Kansas Statutes Annotated, (1984) which is not kept current; one set of Kansas Administrative Regulations Volumes 1 through 4, (1997); and one Session Laws, Volumes 1-2, (1999). No librarians or other staff personnel, knowledgeable about the collection and upkeep of the collection, are available to help research, answer questions, or to verify the availability of any resource materials. They do not allow residents who use the library to checkout any of the above mentioned legal books at all. There are no basic reference materials, citations, or other current updated services of any kind.

Jimmy W. Miles vs. State of Kansas et al.,
Civil Rights Complaint Pursuant to 42 U.S.C. § 1983

Page 29 of 32

## FIRST CAUSE OF ACTION
## FAILURE TO PROVIDE TREATMENT

**52.**    The actions of defendants as alleged in paragraphs 18 to 52 constitute an unreasonable and unwarranted failure to provide the plaintiff the best available and most qualified treatment in violation of his rights, privileges and immunities guaranteed by the fourteenth amendment to the United States Constitution, and § 1 of the Kansas Bill of Rights, and K.S.A. 59-29a01.

## SECOND CAUSE OF ACTION
## UNREASONABLE SEARCHES AND SEIZURES

**53.**    The actions of defendants as alleged in paragraphs 18 to 52 constitute unreasonable searches and seizures in violation of his rights, privileges and immunities guaranteed by the fourth amendment to the United States Constitution, and § 15 of the Kansas Bill of Rights.

## THIRD CAUSE OF ACTION
## OVERLY RESTRICTIVE CONDITIONS

**54.**    The actions of defendants as alleged in paragraphs 18 to 52 constitute deprivations of Plaintiff's liberty, speech and property rights in violations of his right to due process guaranteed by law under the fourteenth amendment to the United States Constitution, and § 1 of the Kansas Bill of Rights.

## FOURTH CAUSE OF ACTION
## DENIAL OF ACCESS TO LEGAL MATERIALS AND COUNSEL

55.   The actions of defendants as alleged in paragraphs 18 to 52 constitute deprivations of constitutional right to legal materials and right to counsel in violation of his rights guaranteed under the sixth amendment to the United States Constitution, and § 10 of the Kansas Bill of Rights.

## FIFTH CAUSE OF ACTION
## UNREASONABLE RESTRICTION ON FREE SPEECH

56.   The actions of defendants as alleged in paragraphs 18 to 52 constitute unreasonable and unwarranted restrictions on plaintiff's right to freedom of speech and expression and his right to freedom of religion in violation of his rights, privileges and immunities guaranteed by the first amendment to the United States Constitution, and § 3 of the Kansas Bill of Rights.

## PRAYER FOR RELIEF

**WHEREUPON**, the plaintiff prays for the following relief:

A.   All appropriate declaratory relief declaring the constitutional rights to which Mr. Miles is entitled while confined at SPTP, among other things, that:

1.   Mr. Miles is entitled to the best available and most qualified treatment.

2.   Defendants may not punish Mr. Miles without providing him appropriate due process, including, but not limited to, notice of the offense and of a reasonable and properly announced regulation with which he is charged, and a hearing prior to imposition of punishment.

B.   The conditions under which Mr. Miles is confined are overly restrictive,

unrelated to any legitimate security or treatment concerns and far less restrictive alternatives are available.

1.  All appropriate preliminary and permanent injunctions requiring defendants to provide all constitutional rights to which Mr. Miles is entitled while confined at SPTP among other things, that:

2.  Requiring defendants to provide the best available treatment to Mr. Miles.

3.  Restraining, enjoining and prohibiting defendants from punishing Mr. Miles.

4.  Restraining, enjoining and prohibiting defendants from confining Mr. Miles under excessively restrictive conditions and requiring them to correct the conditions under which he is confined.

C.  Judgement in favor of the plaintiff against all defendants, jointly and severally, for compensatory and punitive damages in amounts to be proven at trial.

B.  An award of plaintiff's cost, expenses and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law.

E.  Such additional reliefs as the court may deem just and appropriate.

Dated:   August 1, 2003

Jimmy W. Miles
Larned State Security Hospital
Dillon Building-SPTP
Rural Route 3, Box 89
Larned, Kansas 67550
Phone No.: (620) 285-2156